UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXSAM, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>WAGEWORKS, INC.,<br><br>        Defendant. | Case No. 19-cv-04538-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO TRANSFER AND DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket Nos. 31, 39 |

## I.    INTRODUCTION

This case involves claims of patent infringement by Plaintiff AlexSam, Inc. ("AlexSam") against Defendant WageWorks, Inc. ("WageWorks"). Before bringing this action, AlexSam sued HealthEquity, Inc. ("HealthEquity") in U.S. District Court in Utah for similar acts of infringement. Shortly after AlexSam's suit against WageWorks was filed in this Court, HealthEquity acquired WageWorks and became the latter's parent company. Thereafter, HealthEquity and WageWorks, represented by the same counsel, submitted virtually identical motions to dismiss in their respective cases. AlexSam then moved to stay the instant case or, in the alternative, to transfer it to the District of Utah for potential coordination or consolidation with the HealthEquity action. The Court granted AlexSam's motion to stay in January 2020, pending resolution of HealthEquity's motion to dismiss the first-filed Utah action. After the Utah court denied HealthEquity's motion, this Court instructed the parties to file supplemental briefs on WageWorks' motion to dismiss and AlexSam's motion to transfer.

The parties completed briefing in early November and the Court has carefully reviewed

1  their arguments. For the reasons stated herein, the Court finds that AlexSam has sufficiently
2  demonstrated that this action could have been brought in the District of Utah and that it is in the
3  interest of justice to transfer the case to that district. The Court therefore **GRANTS** AlexSam's
4  motion to transfer the case to the District of Utah and **DENIES** WageWorks' motion to dismiss
5  without prejudice.

## II. BACKGROUND

As alleged in the operative complaint, AlexSam is a Texas corporation that holds all rights to United States Patent No. 6,000,608 (the "'608 Patent"), entitled "Multifunction Card System."[1] First Amended Complaint (Docket No. 29) ¶ 1-2. According to AlexSam, WageWorks is a Delaware corporation with its principal place of business in northern California, *id.* ¶ 3, "that administers health savings accounts and other consumer directed benefits accounts," Motion to Stay or Transfer (Docket No. 39) at 2.[2] AlexSam alleges that WageWorks has committed acts of direct, contributory, and induced infringement of Claims 32 and 33 of the '608 Patent. FAC ¶ 58, 67, 70. AlexSam initiated proceedings against WageWorks in this Court on August 2, 2019. *See* Docket No. 1.

Before this suit was filed, AlexSam also sued HealthEquity in the District of Utah, filing its original complaint on June 29, 2019. *See AlexSam, Inc. v. HealthEquity, Inc.*, No. 2:19-cv-00445-HCN-CMR (D. Utah) ("*HealthEquity*"). AlexSam asserts that HealthEquity, like WageWorks, is "a company that administers health savings accounts and other consumer directed benefits accounts." Docket No. 39 at 2. AlexSam further contends that "WageWorks and HealthEquity were partners until, on August 30, 2019, HealthEquity announced that it had completed its acquisition of WageWorks." *Id.*; *see also* FAC ¶ 56 ("WageWorks was purchased by HealthEquity . . . on August 30, 2019.").[3] In its operative complaint against HealthEquity,

---

[1] According to AlexSam, the "primary purpose of the '608 Patent is to implement a multifunction card system, such as one that utilizes a rechargeable pre-paid card, a pre-paid card with a loyalty function, or a medical information card that will perform as [a] normal bank card (credit/debit) to purchase goods and services." FAC ¶ 17.

[2] Docket numbers refer to filings in the instant case unless the citation indicates otherwise.

[3] WageWorks notes that "HealthEquity announced publicly that it would be acquiring

2

AlexSam alleged infringement of Claims 32 and 33 of the '608 Patent, as it does here. *See* Docket No. 59, Ex. A at 2-3.

AlexSam observes that, in response to these suits, HealthEquity and WageWorks retained "the same counsel to present the same defense against AlexSam's patent infringement claims." Docket No. 39 at 2. Moreover, HealthEquity and WageWorks "filed substantively identical motions to dismiss" on the grounds that the asserted patents recited ineligible subject matter on October 23, 2019, and November 20, 2019, respectively. *See id.*; *see also* Docket No. 31 (containing WageWorks' motion to dismiss in the instant case); Docket No. 39, Ex. A (containing HealthEquity's motion to dismiss, identified as Docket No. 32 in *HealthEquity*).

After briefing on the motion to dismiss in *HealthEquity* was completed in early December 2019, the District of Utah eventually set a hearing for March 2020. *See HealthEquity*, Docket Nos. 39 and 40. Briefing on WageWorks' analogous motion was not completed until January 2020, but on December 27, 2019, AlexSam filed a motion to stay or transfer proceedings in the instant case pending resolution of the first-filed *HealthEquity* motion. *See* Docket No. 39. Briefing on the motion to stay or transfer continued over the course of the following month in anticipation of this Court's hearing on the two motions, scheduled for January 30, 2020. At that hearing, the Court granted AlexSam's motion to stay, Docket No. 49, deferring consideration of WageWorks' motion to dismiss and AlexSam's motion to transfer, Docket No. 50.

On August 7, 2020, the District of Utah issued its decision denying HealthEquity's motion to dismiss. Docket No 59, Ex. A at 1, 12. The court could not "find as a matter of law at this early stage of the proceedings that Claims 32 and 33 of the '608 patent are ineligible for protection under [35 U.S.C. § 101]."[4] *Id.* at 12. Proceedings before this Court then resumed, with the Court setting dates for technology tutorial and claim construction hearings in March and April of 2021, respectively. Docket No. 66. Additionally, on October 15, 2020 the Court instructed the parties to

---

WageWorks" on June 27, 2019, just one day after AlexSam filed its complaint against HealthEquity. Opposition to Motion to Stay or Transfer (Docket No. 42) at 1-2.

[4] HealthEquity subsequently petitioned the Federal Circuit for interlocutory review of the Utah court's decision on ¶ 101 eligibility. The Federal Circuit denied HealthEquity's petition on October 14, 2020. *See* Docket No. 69.

1  submit supplemental responses to the still-pending motions to dismiss (by WageWorks) and to
2  transfer (by AlexSam).  Docket Nos. 70 and 72.  Briefing was completed on November 5, 2020
3  and the motions were taken under consideration without further argument.[5]  *See* Docket Nos. 74
4  and 75.

### III.     LEGAL STANDARD

A district court may transfer a civil action to any other district or division where the case may have originally been brought "for the convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a).  The purpose of § 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Kohli v. McKesson Corp.*, No. 13-cv-03199-CRB, 2013 WL 5733721, at *2 (N.D. Cal. Oct. 22, 2013) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (internal quotations omitted); *see also In re Apple Inc.*, 979 F.3d 1332, 1346 (Fed. Cir. 2020) (noting that "the entire premise of a § 1404(a) transfer motion is that a case, although brought in a proper venue, should nevertheless be transferred for the convenience of the parties") (emphasis omitted).

Courts employ a two-step analysis in deciding whether to transfer an action.  *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013).  First, a court asks whether the action could have been brought in the forum where the moving party seeks to transfer the case. *Id.*  Where that threshold requirement is met, the court next conducts "an 'individualized, case-by-case consideration of convenience and fairness.'"  *Id.* (quoting *Van Dusen*, 376 U.S. at 616).  District courts have wide discretion in evaluating these matters, as "weighing the factors for and against transfer involves subtle considerations . . . best left to the discretion of the trial judge."  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).  The Ninth Circuit directs lower courts to consider several discretionary factors, which this District typically

---

[5] AlexSam subsequently filed a motion to strike WageWorks's supplemental brief on the grounds that it improperly introduced new and/or redundant material.  *See* Docket No. 78.  An opposition and reply followed.  *See* Docket Nos. 79 and 80.  As the parties' dispute in these filings concerns WageWorks' motion to dismiss rather than AlexSam's motion to transfer, the Court need not rule on them here.

construes as including the

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (quoting *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009)); *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (enumerating a similar list of factors). Courts often group the first four considerations together as private-interest, and the latter four together as public-interest, factors. *See, e.g.*, *In re Apple*, 979 F.3d at 1338 (discussing "the well-established private and public interest factors" of the § 1404(a) inquiry). The party seeking transfer bears the burden of showing that transfer is appropriate. *Commodity Futures*, 611 F.2d at 279.

In regard to the first step of the transfer analysis, venue in patent cases is governed by 28 U.S.C. § 1400(b). "Any civil action for patent infringement may be brought [1] in the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Under the first prong, the Supreme Court has held that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017). Under the second prong, courts have generally held that plaintiffs need only offer good-faith allegations of "'de minimis' infringement" to satisfy the statute. *See, e.g.*, *Rackman v. Tex. Instruments*, 712 F. Supp. 448, 449 (S.D.N.Y. 1989). In order for a defendant to have a "regular and established place of business" in a particular district, the Federal Circuit has explained that "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). "If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *Id.*

///

///

## IV. DISCUSSION

In arguing the motion to transfer, the parties do not dispute that WageWorks is incorporated in Delaware and so does not "reside" in Utah "for purposes of the patent venue statute." *See TC Heartland*, 137 S. Ct. at 1517. The Court must therefore determine whether AlexSam has sufficiently demonstrated that WageWorks "has committed acts of infringement and has a regular and established place of business" in the District of Utah, where AlexSam seeks transfer of this action. *See* 28 U.S.C. § 1400(b). If the Court finds that AlexSam has satisfied the requirements of the patent venue statute, it must then decide if transfer would promote "the convenience of parties and witnesses" and "the interest of justice," 28 U.S.C. § 1404(a), looking to the aforementioned private- and public-interest factors. The Court addresses each of these issues in turn.

### A. Acts of Infringement

In its motion to transfer, AlexSam did not expressly charge that WageWorks has committed acts of infringement in the District of Utah. In its reply brief, however, AlexSam presented evidence tending to show that WageWorks infringes the '608 Patent by administering spending and savings accounts for customers residing in Utah. *See* Docket No. 43 at 4. As a threshold matter, the Court must decide whether AlexSam waived its infringement argument by failing to raise it in the motion to transfer.

The general rule in the Ninth Circuit, as elsewhere, is that "new arguments and evidence presented for the first time in Reply are waived." *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (citing *United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000)). This rule of waiver, however, is not a "rigid" one, and "may as a matter of discretion not be adhered to where circumstances indicate that it would result in basically unfair procedure." *In re Apple*, 979 F.3d at 1337 (quoting *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990)); *see also Koerner v. Grigas*, 328 F.3d 1039, 1048-49 (9th Cir. 2003) (noting exceptions to the general rule against considering matters not argued in an opening brief, *e.g.*, where "the failure to raise the issue properly did not prejudice the defense of the opposing party").

Earlier in the instant litigation, WageWorks objected that "AlexSam did not argue or

present any evidence in its opening brief that WageWorks 'has committed acts of infringement' in Utah as § 1400(b) requires," and instead "added new allegations of purported infringing activity in Utah . . . as well as a new set of exhibits intended to prove that point" in its reply. Docket No. 44 at 2-3. WageWorks therefore "request[ed] that the Court strike AlexSam's new reply evidence and arguments *or, in the alternative, grant WageWorks' motion for leave to file a sur-reply*." *Id.* at 4 (emphasis added). The Court promptly granted WageWorks' motion to file a sur-reply. *See* Docket No. 45. In the sur-reply, WageWorks directly responded to AlexSam's contentions raised in the reply brief that WageWorks "has a regular and established place of business" and "has committed acts of infringement" in Utah. *See* Docket No. 47 at 2-3. WageWorks also attached a declaration to the sur-reply from the company's Secretary, Delano W. Ladd IV, which averred "that WageWorks does not own or lease any property in Utah." *Id.* The Ladd declaration, in fact, remains WageWorks' principal source of support for its position on the motion to transfer in the company's supplemental brief, filed several months later. *See* Docket No. 47-1, 66 at 11.

In view of the full opportunity of the parties to brief the issue, it is appropriate to consider the arguments in favor of transfer first raised in AlexSam's reply brief. As the Court granted WageWorks' request to file a sur-reply—which WageWorks described as a suitable alternative to striking AlexSam's reply altogether and which it used to supplement the record with key evidence—WageWorks is not prejudiced by this decision. *See In re Apple*, 979 F.3d at 1338 n.1 (declining to apply waiver to new arguments in the moving party's reply where, *inter alia*, the non-moving party, "through its sur-reply, received both the last word and extra space for briefing" on a transfer motion).

Turning to the merits, the Court concludes that AlexSam has adequately alleged acts of infringement in the District of Utah and that WageWorks has failed to rebut these allegations. AlexSam offers two pieces of evidence tending to show that WageWorks has infringed the '608 Patent within the district. First, as alluded to above, AlexSam produces an HR Benefits Guide for employees of Utah Valley University, located in Orem, Utah. The pamphlet contains information for eligible employees to participate in a university-sponsored Flexible Spending Account (FSA) and a Health Savings Account (HSA). Docket No. 43-3 at E-14, E-15. According to the Benefits

7

Guide, both of these accounts are "administered through WageWorks." *Id.*; *see also id.* at E-23 (providing contact information for various coverage providers, including WageWorks for the FSA and HSA plans). AlexSam thus argues "WageWorks administers [FSA] and [HSA] programs for customers in Utah" and so has "committed acts of infringement in Utah." *See* Docket No. 43 at 4. Second, AlexSam presents evidence that, from September 1, 2015 through August 31, 2019, WageWorks was "the third party administrator for the TexFlex program," a retirement-account program provided by the Employees' Retirement System of Texas. *See* Docket No. 74 at 10 (citing Docket No. 74-3 at 3, 11). The TexFlex Frequently Asked Questions (FAQ) document states that the program was "managed from offices in Louisville, Kentucky and Salt Lake City, Utah." *Id.* (quoting Docket No. 74-3 at 3). In AlexSam's view, this document "supports the conclusion that WageWorks was managing the TexFlex program (which appears likely to have involved infringing activity) from Salt Lake City" throughout the period in question.

While AlexSam's allegations do not provide absolute clarity as to the infringing acts it accuses WageWorks of committing in Utah, the gravamen of those allegations is plausible. In its complaint, AlexSam charges WageWorks with "providing a multifunction card system, containing at least one debit/medical services card," to "individuals participating in a healthcare benefits," or other similar, program. FAC ¶ 60. This system, AlexSam contends, "infringes the '608 Patent."[6] *Id.* While the complaint also states that WageWorks "is in the business of selling and offering for sale the . . . Accused Products to customers throughout the United States," *id.* ¶ 61, AlexSam's moving papers suggest that WageWorks "ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises the Accused Products" specifically in the District of Utah. *See id.* ¶ 58. And the moving papers, as previously discussed, present evidence that WageWorks administered particular healthcare and retirement benefits programs either (1) to customers residing in Utah or (2) from within offices in the state. AlexSam's contention that WageWorks has infringed the '608 Patent in Utah therefore represents a reasonable inference, supported by evidence tending to prove

---

[6] AlexSam also alleges, *inter alia*, that WageWorks "employs staff . . . to interface with, install, configure, manage, monitor, test, and control the debit/medical services cards and other equipment in the infringing multifunction card system." FAC ¶ 62.

8

as much.

Notably, WageWorks does not offer any meaningful rebuttal to these allegations in either its sur-reply or its supplemental brief. In the former, WageWorks simply states that "AlexSam did not argue or present any evidence *in its opening brief* that WageWorks 'has committed acts of infringement' in Utah as § 1400(b) requires." Docket No. 47 at 2 (emphasis added). Given that WageWorks was permitted to file a sur-reply for the express purpose of responding to the arguments in favor of transfer raised in AlexSam's reply (including with regard to infringing acts), this observation does not advance its cause. Additionally, in its supplemental brief WageWorks is entirely silent on the issue of whether it has committed acts of infringement in Utah, choosing instead to argue only that it does not have "a regular and established place of business" in the state. *See* Docket No. 75 at 11-12.

The Court therefore finds that AlexSam has produced evidence sufficient to support a finding that WageWorks has committed potential acts of infringement in the District of Utah.

B.  Regular and Established Place of Business

The parties devote most of their attention to the question of whether WageWorks "has a regular and established place of business" in the District of Utah.[7] *See* § 1400(b). The Federal Circuit addressed this aspect of the patent venue provision at length in *In re Cray*. Construing the meaning of the statutory phrase "regular and established place of business," the court commented that "no precise rule has been laid down and each case depends on its own facts." 871 F.3d at 1362. Nevertheless, it concluded that there are "three general requirements relevant to the inquiry." *Id.* at 1360. First, "there must be a physical place in the district," *i.e.*, "a physical, geographical location in the district from which the business of the defendant is carried out." *Id.* at 1362 (internal quotation marks omitted). While the statute does not "refer merely to a virtual

---

[7] In their initial round of briefing, the parties indirectly raised the related question of whether a wholly owned subsidiary should be treated as the alter ego of its parent company for purposes of the patent venue statute. *See* Docket No. 43 at 3; Docket No. 47 at 2-3. The parties did not squarely address the question, nor did they cite caselaw in support of one position or the other. In any event, the Court finds that it need not decide the issue, as the parties focused on the status of WageWorks as an independent entity in their supplemental responses to AlexSam's transfer motion. Nor need the Court address the significance of the allegation that WageWorks and HealthEquity were partners at the time this suit was filed.

9

space or to electronic communications from one person to another," "the 'place' also need not be a 'fixed physical presence in the sense of a formal office or store.'" *Id.* (quoting *In re Cordis Corp.*, 769 F.2d 722, 737 (Fed. Cir. 1985)). Second, "the place must be a regular and established place of business." *Id.* (internal quotation marks omitted). This means that "sporadic activity cannot create venue" and that "the place in question must be . . . of sufficient permanence" and "stable." *Id.* at 1362-63. Third, "the regular and established place of business . . . must be a place *of the defendant*, not solely a place of the defendant's employee." *Id.* at 1363 (internal quotation marks omitted). Relevant considerations for this requirement "include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place"; whether the defendant stores "materials at a place in the district so that they can be distributed or sold from that place"; and whether the defendant "represent[s] that it has a place of business in the district," such as by "list[ing] the alleged place of business on a website, or in a telephone or other directory." *Id.* "In the final analysis," the Federal Circuit explains, "[a] court must identify a physical place, of business, of the defendant." *Id.* at 1364.

In its briefing on the issue, AlexSam identifies four pieces of evidence suggesting that WageWorks "has a regular and established place of business" in Utah. First, AlexSam attaches a printout (dated December 27, 2019) from the Utah.gov website stating that WageWorks is registered to do business in the state at an address in Draper, Utah; that a registered agent is located in Midvale, Utah; and that its registration was renewed in November 2019. Docket No. 39-2 at B-1. Second, AlexSam presents an SEC filing, a Form 10-K/A, "for the annual period ended December 31, 2016." Docket No. 74-1 at 4. In this document, WageWorks states that, in addition to its corporate headquarters in San Mateo, California, it "ha[s] additional facilities in Arizona, Georgia, Kentucky, Massachusetts, Texas, *Utah*, Vermont and Wisconsin under various leases that will expire between March 2017 and April 2023." Docket No. 74-1 at 31 (emphasis added). Third, AlexSam points to filings with the Utah Department of Commerce demonstrating that WageWorks has been registered to transact business in the state since August 2009. *See* Docket 74-2 at 1. The filings included with AlexSam's supplemental brief state that WageWorks also re-registered with the Commerce Department every year from 2011 to 2020 except for 2016

10

and 2019—years for which no registration documents are provided. *See* Docket 74-2. Fourth, AlexSam offers the previously described TexFlex FAQ document, which states that WageWorks was "the third-party administrator" of the TexFlex program from September 2015 through August 2019, and that the program was "managed from offices in . . . Salt Lake City, Utah." Docket No. 74-3 at 3.

Against this evidence, WageWorks offers the declaration of Ladd, the company's Secretary. The declaration avers that "WageWorks does not currently maintain, and to [Ladd's] knowledge, has never maintained any real or personal property, including storage, distribution, or manufacturing facilities, in Utah." Docket No 47-1 ¶ 4. The declaration further states that the "WageWorks does not own or lease any office space in Utah," *id.* ¶ 5—including at the address in Draper, which WageWorks describes as "[t]he only property in Utah that is in any way related to WageWorks," Docket No. 47 at 3. That location, according to Ladd, "is owned by a local developer and leased by HealthEquity, Inc." Docket No. 47-1 ¶ 5. In addition, WageWorks disputes the probative value of its "10-K from 2016," which, it argues, shows only that "WageWorks at one time leased property in Utah," a fact "that is irrelevant to whether it did so at the time this lawsuit was filed or [if] it does so now." Docket No. 75 at 11. WageWorks also contends that the TexFlex FAQ form "states only that WageWorks had a contract to administer the program until August 31, 2019," and posits that while the program may have been managed from Salt Lake City "*management* of the program is not the same thing as *administering* it." *Id.* at 12 (emphasis added).

While the Court acknowledges that AlexSam's position here is not unassailable, it nevertheless concludes that AlexSam has produced evidence sufficient to support a finding that WageWorks, at or around the time this action was filed, had a regular and established place of business in Utah. WageWorks' Form 10-K/A indicates that it leased one or more "facilities" in Utah from a period extending at least from the end of 2016 through March 2017 at the earliest and April 2023 at the latest. Docket No. 74-1 at 31. In the terms of *In re Cray*, the 10-K form shows that WageWorks maintained "a physical place in the [D]istrict" of Utah, a "geographical location . . . from which the business of [WageWorks was] carried out." *See* 871 F.3d at 1362.

11

The substantial (although indeterminate) length of the lease also suggests that the place of business referred to the 10-K form was (or is) "regular and established," rather than merely "sporadic." *See id.* at 1362. This conclusion is further borne out by the fact that WageWorks has been continuously registered to transact business in the state for all but two years over the past decade. *See* Docket No. 74-2. While it is somewhat perplexing that AlexSam is unable to produce filings for these two missing years (including 2019, the year in which this action was filed), this part of the record nevertheless attests to the seeming longevity of WageWorks's business interests in Utah. And with regard to the requirement that the physical location be "the place of the defendant" rather than another party, *see* 871 F.3d at 1363, WageWorks does not suggest that the facility (or facilities) referred to in the 10-K form somehow "belongs" to someone else.

AlexSam has therefore adequately "identif[ied] a physical place, of business, of the defendant" on the basis of the 10-K form and registration filings. *See id.* at 1364. All of these conclusions, moreover, are reinforced by AlexSam's contentions, supported by evidence, that WageWorks maintains a physical place of business at the Draper address, Docket No. 39-2 at B-1, and that it administers the TexFlex program from "offices in . . . Salt Lake City," Docket No. 74-3 at 3. In the former instance, the printout from Utah.gov shows that the state government and/or WageWorks itself "lists the alleged place of business on a website, or in a telephone or other directory," *see* 871 F.3d at 1363, an indication that the place belongs to WageWorks itself and not another party. Nor is this conclusion necessarily weakened by WageWorks' contention, in the Ladd declaration, that the Draper property is *currently* "owned by a local developer and leased by HealthEquity, Inc," Docket No. 47-1 ¶ 5. WageWorks is now a wholly-owned subsidiary of HealthEquity; it may reasonably be inferred that, *e.g.*, WageWorks was the previous tenant of the Draper address prior to its acquisition by HealthEquity in August 2019 and/or that WageWorks continues to occupy the property without being the official tenant. The *In re Cray* court, of course, did not require that "the defendant owns or leases the place," but that it "exercises [certain] attributes of possession or control over the place." 871 F.3d at 1363. The declaration's refutation does not render WageWorks' "possession or control over the place" implausible. As for the

TexFlex program, the FAQ pamphlet indicates that WageWorks acted as the program's administrator for four years, from September 2015 until August 2019, and that the program was managed from a physical location in Salt Lake City (along with Louisville, Kentucky). Docket No. 74-3 at 3. Taken together, this evidence permits the reasonable inference that WageWorks long maintained, and/or currently does maintain, a regular and established place of business in Utah.

Importantly, WageWorks' arguments and evidence on this issue are evasive. For example, the Ladd declaration asserts that WageWorks "has never *maintained* any real or personal property, including storage, distribution, or manufacturing facilities, in Utah." Docket No 47-1 ¶ 4 (emphasis added). The declaration, however, does not explain what is meant by "maintained." In contrast, WageWorks' Form 10-K/A (which, as AlexSam observes, is "subject to strict anti-fraud regulations," Docket No. 74 at 9) expressly states that the company was "leas[ing] some type of "facilit[y]" in Utah until the lease's scheduled expiration date sometime between March 2017 and April 2023. *See* Docket No. 74-1 at 31; *see also* Docket No. 75 at 11 (admitting that the 10-K form shows that "WageWorks at one time leased property in Utah"). The Ladd declaration is thus vague and not necessarily inconsistent with Form 10-K/A.

WageWorks further undermines its position when it disclaims any ownership or leasehold interest in office space at the Draper address, but also concedes that this property is in *some* way "related to WageWorks," *see* Docket No. 47 at 3, without offering any explanation as to how. Similarly, WageWorks suggests that "management" of the TexFlex program (which occurred in Utah) might be different from the program's "administration" (which WageWorks was admittedly responsible for), *see* Docket No. 75 at 12, without offering any explanation of what these differences mean. WageWorks is correct that it "is not required to disprove elements of AlexSam's motion[]" to transfer insofar as AlexSam bears the initial burden of persuasion as the moving party. But once AlexSam raises the reasonable inference that WageWorks has a regular and established place of business in Utah, WageWorks cannot prevail by resorting to "intentionally vague or ambiguous" arguments that seem "designed to defeat transfer," *see* Docket No. 74 at 9.

13

The Court thus concludes that AlexSam has carried its burden under § 1400(b), demonstrating both that (1) WageWorks committed potential acts of infringement and that (2) WageWorks maintains "a regular and established place of business" in the District of Utah.

### C. Convenience and Fairness

Having found that this action could originally have been brought in Utah, the Court proceeds to consider the convenience and fairness to the parties of transferring the instant action under § 1404(a). In its motion, AlexSam argues that "each of this Court's factors for evaluating a Motion to Transfer either favor or are neutral on the issue." Docket No. 39 at 6. AlexSam notes that the Northern District of California and the District of Utah are equally familiar with the applicable law (*i.e.*, federal patent law) and that neither district has a particular local interest in adjudicating this action. *Id.* at 7. Both factors are therefore neutral. AlexSam also acknowledges that "documentary evidence relevant to [its] claim is stored electronically and can be transferred to and accessed from any location," demonstrating that neither forum enjoys greater ease of access to the evidence.[8] *See id.* Additionally, AlexSam initially contended that the plaintiff's choice of forum is a neutral factor because AlexSam "is in favor of transfer," even though it "initially chose" to litigate its claims in the Northern District of California. *Id.* at 6. In its supplemental brief, AlexSam admits "that it is unusual for the Plaintiff to request transfer," but represents that it "filed this case without full knowledge of the connection between WageWorks and its parent, HealthEquity"; WageWorks' acquisition, AlexSam observes, was completed "almost one month after this case was filed." Docket No 74 at 3. Had AlexSam known that "the same claims of the same patent" would ultimately be "asserted against . . . what amounts to one company," it implies that it would have originally pursued this case in the District of Utah. *See id.* In light of the account it offers in its moving papers, AlexSam's initial choice of forum should be afforded little, if any, weight.

---

[8] AlexSam argues, without explanation, that the easy transferability of electronically stored information "weighs in favor of transfer." Docket No. 39 at 7. Based on AlexSam's own reasoning, the Court finds this factor neutral.

14

AlexSam argues that the remaining factors—the convenience of the parties, the convenience of the witnesses, the feasibility of consolidation with other claims, and the relative court congestion and time of trial in each forum—counsel in favor of transfer. As for court congestion and time of trial in each forum, AlexSam cites to judicial caseload statistics among U.S. district courts showing, it argues, that the "Utah District Court is less congested" and that "Utah judges are carrying fewer cases than their Northern District of California counterparts." Docket No. 39 at 7 (citing United States District Courts – National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2018.pdf) ("Caseload Profile"). This document, however, indicates that the median time from filing to trial in civil cases in this District was 7.6 months at the end of 2018, whereas it was 9.7 months in the District of Utah. Caseload Profile at 66, 85. Thus, while the total number of civil filings in this District for the same period was more than twice that of the Utah courts, this evidence, without more, does not conclusively show that "Utah District Court offers a more streamlined path to resolution of this patent infringement claim," *see* Docket No. 39 at 7. The Court considers this factor neutral.

Regarding the convenience of witnesses, AlexSam initially asserted that "witnesses relevant to the WageWorks claim will be located in both Utah and California" and that "[t]his factor is neutral." *Id.* But in its supplemental brief, AlexSam points out that WageWorks identified only "three party witnesses with relevant information" in its initial disclosures. Docket No. 74 at 11. As of late 2020, all three witnesses stated, on their LinkedIn profile pages, that they were currently employed by HealthEquity and that they were located in either Salt Lake City or Draper, Utah. *See* Docket Nos. 74-4, 74-5, 74-6. As a result, AlexSam now asserts that "witnesses relevant to the WageWorks claim are in Utah, not California," and that "this factor favors transfer." Docket No. 74 at 11.

Finally, AlexSam argues that the factors involving the convenience of the parties and the feasibility of consolidation with other claims are closely related here. The company contends "that it would be more convenient to all parties if a single court (and potentially a single coordinated proceeding) resolves the dispute as to HealthEquity and its subsidiary, WageWorks," and that "[t]he need for consolidation between the Utah Case and the California Case is essential."

15

Docket No. 39 at 6-7. It therefore urges that these factors decisively weigh in favor of transfer. *Id.*

WageWorks' responses are largely unresponsive and perfunctory. In its opposition to AlexSam's transfer motion, WageWorks focuses primarily on the factors' application to WageWorks' motion to dismiss rather than to the broader litigation. *See* Docket No. 42 at 7-8 (arguing, *e.g.*, that "congestion is not a problem because there will be no motion hearing . . . and the Court is free to consider the motion to dismiss at its leisure"). As AlexSam notes, "WageWorks' analysis of these factors is improperly restricted." Docket No. 43 at 4. WageWorks' only argument regarding the case as a whole is the somewhat conclusory contention that "local interests disfavor a transfer because WageWorks is headquartered, and therefore at home, in the Northern District of California." *Id.* at 8. And beyond the two brief paragraphs addressing the convenience and fairness inquiry in its opposition, WageWorks does not discuss the issue at all in either its sur-reply or supplemental brief. *See* Docket No. 47, 75 at 11-12.

In light of the foregoing, the Court agrees with AlexSam that considerations of convenience and fairness either favor transfer or remain neutral. In particular, the Court finds that the factors pertaining to the convenience of witnesses, the convenience of the parties, and the feasibility of consolidation with related claims decisively tip the balance toward transfer. The three party witnesses identified in WageWorks' own initial disclosures each appear to work and reside in Utah; WageWorks neither refutes this conclusion nor offers any countervailing evidence for why it would be more convenient for witnesses to litigate this case in California.

Above all else, considerations of judicial economy and the effective administration of justice *strongly* favor transfer. As AlexSam emphasizes vis-à-vis the *HealthEquity* case, this action involves "the same claims of the same patent," which are "being asserted against essentially the same technology and services offered by what amounts to one company." Docket No. 74 at 3. HealthEquity and WageWorks are being represented by the same counsel in the two cases and the companies presented substantially identical motions to dismiss in each one. *Supra*. Key issues to be decided by the court in *Health Equity*—*e.g.*, validity of the patent at issue and claim construction—are identical to those presented here. As there is a compelling interest in avoiding

16

duplicative and potentially inconsistent rulings, this action demands "coordination or consolidation with the *HealthEquity*" case, as AlexSam argues. *See id.* Indeed, the Federal Circuit recently emphasized that transfer is often appropriate where "there are pending cases" in the transferee forum "involving some overlapping issues." *In re Apple*, 979 F.3d at 1344. This is especially true of patent infringement cases, given the unique "importance of uniformity in the treatment of a given patent," *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1329 (Fed. Cir. 2008). In such situations, "judicial economy benefits . . . weigh[] at least slightly in favor of transfer." *Id.*

In sum, the Court concludes that AlexSam has carried its burden under § 1404(a) in showing that it would be convenient to the parties and witnesses, and in the interest of justice, to transfer this case to Utah.

## V. CONCLUSION

For the reasons given above, the Court **GRANTS** AlexSam's motion to transfer this action to the District of Utah. As a result, the Court also **DENIES** WageWorks' motion to dismiss without prejudice.

This order disposes of Docket Nos. 31 and 39.

**IT IS SO ORDERED**.

Dated: December 21, 2020

_____
EDWARD M. CHEN
United States District Judge